UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MELISSA D. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-109 |
| | ) | (PHILLIPS/GUYTON) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 and 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 and 17]. Plaintiff Melissa D. Davis seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On March 23, 2004, Plaintiff filed an application for a period of disability, disability insurance benefits, and alleging disability beginning December 31, 2003. [Tr. 103-05]. After her application was denied initially and upon reconsidering, Plaintiff filed a written request for a hearing on April 22, 2005. [Tr. 86-87]. On January 22, 2007, a hearing was held before an ALJ to review the determination of Plaintiff's claim. [Tr. 777-809]. On May 10, 2007, the ALJ found that the Plaintiff was not disabled. [Tr. 52-64]. Plaintiff appealed the ALJ's decision to

1

the Appeals Council, and on December 5, 2008, the council remanded the case to the ALJ for reconsideration. [Tr. 43-46]. On February 24, 2009, another hearing was held before the ALJ to review the determination of Plaintiff's claim. [Tr. 756-74]. On May 18, 2009, the ALJ found that the Plaintiff was not disabled. [Tr. 18-32]. The Appeals Council denied Plaintiff's second request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 9-12]. The Plaintiff now seeks judicial review of the Commissioner's decision.

I.   ALJ'S FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2.  The claimant has not engaged in substantial gainful activity since May 30, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following impairments, the combination of which is severe: history of L5-L6 pars defect with disc herniation and spondylosis, status-post L5-L6 discectomy and fusion, sleep apnea, obesity, idiopathic paroxysmal dystonia vs. psychogenic intermittent movement disorder, major depression, anxiety, panic disorder, anxiety, and a personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant cannot perform more than occasional balancing, stooping, kneeling, crouching, or crawling. The claimant cannot perform any climbing of ladders, ropes, or scaffolds and she cannot be exposed to hazards of environmental pollutants. The claimant can understand and remember simple and

detailed tasks; will have some difficulty with extended concentration, but can still perform simple and detailed tasks over a full work week; can interact with peers and supervisors; will have some, but not significant, difficulty interacting with the general public; can adapt; can set goals independently; and can respond appropriately to change.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 13, 1968 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 23-32].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529.

The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146, (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v.

Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546–47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    Medical Evidence**

The relevant evidence in the record can be summarized as follows:

A.   *Robert S. Hellman, M.D.*

Dr. Hellman has been Plaintiff's treating physician since at least 1997. In January 2007, Dr. Hellman completed a form entitled "Muscle and Movement Disorder Residual Functional Capacity Questionnaire" in which he responded to a variety of short-answer and multiple-choice questions. [Tr. 604-07]. Therein, Dr. Hellman opined that Plaintiff suffered from dystonia: muscle spasms that created "seizure like" episodes. [Tr. 604]. Dr. Hellman noted that the episodes would occur at least seven times per week for 45 minutes to over an hour, during which time Plaintiff would experience loss of body control. [Tr. 604]. Stress and pain were noted as precipitating factors. [Tr. 605]. As a result of the dystonia, Dr. Hellman opined that Plaintiff's spasms would disrupt co-workers, Plaintiff will need more supervision at work, and Plaintiff would need to take unscheduled breaks every hour and would miss more than four days of work a month. [Tr. 605-06]. Lastly, Dr. Hellman opined that Plaintiff was incapable of performing "low stress" jobs. [Tr. 606].

B.   *Sharon L. Bryant, Ph.D.*

Dr. Bryant conducted weekly sessions of psychotherapy with Plaintiff between June 2006 and January 2009. [Tr. 585-87; 600-03; 644-45; 729-30]. In October 2006, Dr. Bryant opined that Plaintiff suffered from major depression, recurrent, moderate, and panic disorder. Plaintiff's symptoms included anxiety, depressed mood, hopelessness, and "better off dead" thoughts. [Tr. 585]. Dr. Bryant completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)" in which she scored Plaintiff as "good" with functioning independently and handling simple job instructions, "fair" in regards to relating to co-workers, dealing with the public, and interacting with supervisors, and between "fair" and "poor" when dealing with work

7

stress, maintaining concentration, and behaving in an emotional stable manner. [Tr. 586-87].

In January 2007, Dr. Bryant completed a different form entitled "Muscle and Movement Disorder Residual Functional Capacity Questionnaire." [Tr. 600-03]. Dr. Bryant opined that Plaintiff's muscle spasms were trigged by stress and anxiety. [Tr. 600-03]. The spasms' frequency were noted as occurring around 10 to 40 times per week, each lasting 45 minutes to an hour, causing Plaintiff to experience confusion and exhaustion after the spasm had passed. [Tr. 600-01]. Dr. Bryant opined that Plaintiff's spasms would disrupt co-workers and that she would need more supervision at work. [Tr. 602]. In conclusion, Dr. Bryant opined that Plaintiff would need to take unscheduled breaks during an eight-hour work day, would miss more than four days of work per month, and could only tolerate minimal stress work. [Tr. 602-03].

In August 2007, Dr. Bryant completed another "Medical Assessment of Ability to Do Work-Related Activities (Mental)" questionnaires. [Tr. 614-15]. While, Dr. Bryant's assessment appeared to be consistent with her October 2006 evaluation, Dr. Bryant changed her opinion from "good" to "fair" regarding Plaintiff's ability to use her judgment with the public and function independently. [Tr. 614-15]. However, Dr. Bryant also reported later the same month that Plaintiff had made some improvements in her moods such that she was no longer experiencing suicidal thoughts or feelings. [Tr. 645].

In January 2009, Dr. Bryant opined that Plaintiff had made some further progress in her treatment, such that her previous thoughts of worthlessness and hopelessness had diminished, but Plaintiff continued to experience depressed moods. [Tr. 730]. While Plaintiff continued to experience her seizure-like episodes, Dr. Bryant noted that the episodes had decreased in intensity and frequency. [Tr. 730].

8

C.  *Fenna Tanner Phibbs, M.D. and Peter Hedera, M.D.*

In May 2007, Dr. Hellman referred Plaintiff to Dr. Phibbs, a neurologist. [Tr. 617-25]. During the examination, Plaintiff had one of her seizure-like episodes in which she started to shake, her arms and legs would quiver or extend, and her back became arched. [Tr. 620]. Plaintiff was able to communicate during her spell which slowly wore off after two minutes. [Tr. 620]. Dr. Phibbs noted that Plaintiff denied being depressed or having anxiety. [Tr. 619]. After examining the Plaintiff and reviewing her medical history, Dr. Phibbs concluded that "[t]he description and witnessed episode [were] not consistent with seizure, dystonia, or chorea," but a psychogenic movement disorder. [Tr. 620]. Dr. Phibbs recommended that Plaintiff see a psychiatrist to help her deal with stress and develop coping mechanisms. [Tr. 620].

Dr. Hedera, another neurologist, attested that he had observed the examination conducted by Dr. Phibbs. [Tr. 618]. Dr. Hedera opined that Plaintiff was suggestible because he was "able to provoke her typical episode-irregular jerky movements with some dystonic-like posturing" and could change the frequency of the episode by giving Plaintiff different tasks. [Tr. 618]. Based on his and Dr. Phibbs' examination, Dr. Hedera completed a "Muscle and Movement Disorder Residual Functional Capacity Questionnaire" in June 2007. [Tr. 609-12]. Therein, Dr. Hedera opined that Plaintiff's psychogenic movement disorder caused seizure-like muscle spasms that were induced by stress. [Tr. 609-10]. Dr. Hedera noted that Plaintiff experienced the spasms three to five times per week, each spasm lasting around 20 minutes. [Tr. 609]. Dr. Hedera also noted that Plaintiff's spasm would likely disrupt co-workers and that Plaintiff would require more supervision at work, would need to take three to five unscheduled breaks during an eight-hour work day, would miss more than four days of work per month, and would be unable to tolerate even a "low stress" job. [Tr. 611-12].

9

D.  *John Schulte, Ph.D.*

Between February and December of 2008, Plaintiff began seeing Dr. Schulte for medical management of depression and anxiety. [Tr. 665-86; 702-20]. During a March session, Dr. Schulte noted that Plaintiff "appeared completely relaxed in the waiting room, but started jerking both extremities when she entered my office." [Tr. 675]. During Plaintiff's visit the following month, Dr. Schulte noted Plaintiff "had an extremely atypical episode" where she held her breath while contracting both arms at the elbow, and for the rest of the session she spoke with a fluctuating accent and extended her right leg out for no apparent reason. [Tr. 673]. Dr. Schulte noted that Plaintiff "was clearly able to bend [her leg] as she got up to leave." [Tr. 673]. Plaintiff continued seeing Dr. Schulte almost once a month for the remainder of the year. [Tr. 669; 708; 710; 712; 716]. Treatment notes indicated that Plaintiff typically reported that she was doing "pretty good" or "feeling generally better." [Tr. 669; 708; 710; 712; 716].

E.  *Consulting Medical Source*

In December 2004, state agency psychologist Alison Y. Kirk, Ph.D., completed a form entitled "Mental Residual Functional Capacity Assessment." [Tr. 257-59]. Therein, Dr. Kirk opined that, generally, Plaintiff exhibited no significant mental limitations. [Tr. 257-59]. Dr. Kirk noted that Plaintiff had only moderate limitations in regards to her paying attention and concentrating for extended periods, her ability to complete a normal work-week without interruptions from psychological symptoms, and her ability to interact appropriately with the general public. [Tr. 257-59]. Dr. Kirk concluded that overall Plaintiff could understand and perform simple and detail task, adapt, and interact with peers and supervisors. [Tr. 259].

10

## V. ANALYSIS

On appeal, Plaintiff argues that the ALJ's decision was not supported by substantial evidence for two reasons: (A) Plaintiff argues that the ALJ erred in evaluating the severity and effect of Plaintiff's mental impairments by failing to properly consider the medical records of Plaintiff's treating sources; and (B) as a result of improperly evaluating Plaintiff's mental impairments, the ALJ's Residual Functional Capacity ("RFC") determination was supported by an improper reliance on the Medical-Vocational Guidelines ("the Grid"). [Doc. 15]. The Court will address each of Plaintiff's allegations of error in turn.

### A. Evaluation of Plaintiff's Mental Impairments

As to Plaintiff's first contention, Plaintiff argues that the ALJ erred in evaluating Plaintiff's mental impairments by adopting the December 2004 opinion of Dr. Kirk, [Tr. 382-95], a non-examining state agency psychologist, whose opinion was made seven months after Plaintiff's amended onset date, but several years prior to Plaintiff being treated by additional sources including Drs. Bryant, Hedera, and Schulte. [Doc. 15]. In response, the Commissioner argues that the ALJ discussed the medical records and opinions of each of Plaintiff's treating sources before reaching the state agent's opinion, a fact ignored by Plaintiff. [Doc. 17]. The Commissioner argues that the ALJ further explained why he found Dr. Kirk's opinion more consistent with the record as a whole. [Doc. 17].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

11

evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).

The Court finds that the ALJ discussed and evaluated the opinions given by each of Plaintiff's treating sources prior to discussing and affording weight to the state agency psychologist. After discussing the treatment notes of Drs. Bryant, Hedera, and Schulte, the ALJ summarized his rejection of their opinions as follows:

> The undersigned gives no weight to the October 2006, January 2007, and August 2007 functional assessments of Dr. Bryant, the claimant's treating psychotherapist. The undersigned also gives no weight to the June 2008 functional opinion of Dr. Hedera, indicating that the claimant would miss four more days of work a month and can tolerate no stress at all. The record simply contains

> no clinical documentation for these functional opinions. As explained above, the claimant has required only conservative treatment for allegations of back pain, depression, and anxiety since June 2004. Moreover her mental health treatment has been entirely conservative in the form of psychotherapy and prescribed psychotropic medications. She has not required inpatient psychiatric care or group therapy. Most of the GAF [Global Assessments of Functioning] assessments of her treating psychiatrist, Dr. Schulte, were in the moderate range of limitation. Her mental health providers did not report that she had any significant deficits of memory, concentration, insight, or judgment. Additionally, they did not report that she has any sustained, significant deficits in social functioning.

[Tr. 29].

The last part of the ALJ's discussion summarized the opinion of Dr. Kirk's 2004 functional assessment as follows:

> [Claimant] could understand and remember simple and detailed tasks; will have some difficulty with extended concentration, but can still perform simple and detailed task over a full work week; interest with peers and supervisors; will have some, but not significant, difficulty interacting with the general public; can adapt; set goals independently; and respond appropriately to change. (Exhibit 4F).

[Tr. 26].

Plaintiff argues that "[t]he ALJ erred in rejecting every opinion of Plaintiff's treating physicians in favor of the opinion of the non-examining state agency psychologist who had none of this information when reaching his [sic] conclusion." [Doc. 15]. In response, the Commissioner argues that the ALJ properly considered all opinion evidence of record to support the conclusion that the evidence revealed inconsistent reports as to the frequency and severity of Plaintiff's spells and that Plaintiff had a tendency to exaggerate complaints of muscle spasms that her physicians seemed to accept "uncritically." [Doc. 17].

13

The Sixth Circuit has recently held that the date of an opinion credited by the ALJ is of no consequence where it is supported by evidence within the record. In <u>Fry v. Comm'r of Soc. Sec.</u>, No. 11-1192, 2012 WL 1253202, at *2 (6th Cir. April 16, 2012), the claimant argued that the ALJ erred by relying on a physician's consulting report whose opinion was based on a review of the record prior to treatment notes entered by claimant's subsequent treating physician. The Sixth Circuit held that the ALJ's reliance on the earlier report was nonetheless proper where the opinion was consistent with and supported by other evidence within the record. <u>Id.</u>

Here, the Court finds that only Drs. Hellman, Bryant, and Schulte were treating physicians who had an ongoing and long-term relationship with Plaintiff. Thus, the opinions of the above named doctors were entitled to significant weight unless the ALJ provided "good reason" for refusing to do so. The Court also finds that the ALJ did in fact give significant weight to Dr. Kirk's 2004 opinions instead. Nonetheless, the Court finds the ALJ did not err in evaluating the severity or effect of Plaintiff's mental impairments as the ALJ provided good reasons, supported by evidence, why he found Dr. Kirk's opinions more consistent with the record as a whole.

The ALJ stated why he found no clinical evidence to support the findings of Plaintiff's treating physicians. The ALJ cited to Plaintiff's psychotherapy treatment with Dr. Bryant and medical management of depression with Dr. Schulte as largely centering on Plaintiff's subjective complaints of depression and anxiety and only using conservative methods of treatment. [Tr. 25]. The ALJ noted that Dr. Bryant never reported any significant deficits in Plaintiff's judgment, concentration, memory, or insight. [Tr. 25].

Likewise, in discussing the treatment notes of Dr. Schulte, the ALJ found his examination of Plaintiff produced no significant evidence suggesting that Plaintiff suffered from

concentration lapse, abnormal thought processes, or memory deficits. [Tr. 25]. Plaintiff directs the Court to the findings of Dr. Schulte that Plaintiff suffered from depressive and anxiety disorder, characterized by symptoms such as suicidal thoughts, visual hallucinations, shaking spells, unhappiness, and social withdrawal. However, Plaintiff conceded that Dr. Schulte's treatment notes were "difficult to read" due to his illegible handwriting and largely cites to the Court only self-reported symptoms recorded in Dr. Schulte's treatment notes rather than specific examples of objective evidence supporting the severity of Plaintiff's mental impairments. The ALJ also considered the initial GAF score assigned by Dr. Schulte, which had indicated serious symptoms, but was later replaced by GAF assessments in 2008 and 2009 that indicated only a moderate range of limitations. [Tr. 25]. Moreover, the atypical episode exhibited by Plaintiff during her March 2008 visit with Dr. Schulte, in which Plaintiff "appeared completely relaxed in the waiting room but started jerking both extremities when she entered" the doctor's office, casts doubt on Plaintiff's credibility. [Tr. 25-26].

Furthermore, the Court finds that the ALJ did not err in evaluating and discrediting the findings of Dr. Hedera. Plaintiff points to Dr. Hedera's 2007 assessment in which he opined that Plaintiff suffered from psychogenetic movement disorder, resulting in Plaintiff being unable to perform even a low stress job. [Tr. 612]. The ALJ referred to the opinion as a "benign diagnosis" because the opinion was unsupported by any clinical evidence. [Tr. 25]. Dr. Hedera's opinion was based on a one-time examination of Plaintiff in which he found that Plaintiff was also suggestible, and that it was easy to provoke her seizure-like movements. As the Defendant points out, the ALJ's rejection of Dr. Hedera's opinion was also based on the bizarre behavior observed by both Dr. Phibbs and Dr. Hedera, which called into question the

15

severity and credibility of Plaintiff's complaints. In addition, Plaintiff reported to Dr. Phibbs that she had no depression or anxiety issues. [Tr. 619].

Along with the "conservative mental health treatment history" cited to by the ALJ, the ALJ also cited Plaintiff's daily and social activities which included preparing simple meals, doing laundry and other household chores, driving, attending church, and taking 12 to 19 credit hours at a community college from 2003 to 2007 with a grade point average of 3.706, as evidence bearing more consistently with Dr. Kirk's opinion that Plaintiff's mental impairments would not preclude her from performing sedentary work. [Tr. 30-31].

The Court finds the ALJ's decision to give substantial weight to the state agency psychologist's opinion was supported by good reasons and substantial evidence within the record. Accordingly, the Plaintiff's allegation of error in this regard is not well-taken.

B.   **Application of the Medical-Vocational Guidelines**

The Plaintiff also argues that the ALJ improperly relied on the Grid to demonstrate that jobs were available that met Plaintiff's vocational qualifications. [Doc. 15]. Plaintiff asserts that because the Plaintiff suffered from nonexertional mental impairments, the ALJ was precluded from reliance on the Grid and instead was required to make his determination based on testimony by a vocational expert or other similar evidence. [Doc. 15]. Plaintiff argues that vocational expert testimony in this case was crucial and "it was incumbent upon the ALJ to hear from vocational specialist to determine whether or not jobs existed in the national economy." [Doc. 17] (quoting Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985)).

The Commissioner responds by citing to Kirk v. Sec'y of Health and Human Servs., 778 F.2d 524, 529 (6th Cit. 1981) as case law that has considered Plaintiff's position and ultimately

16

rejected it. [Doc. 17]. The Commissioner argues that a vocational expert was unnecessary because the Grid allows the ALJ to take "administrative notice of the same sources that a vocational expert would use" and thus, a vocational expert would have provided no additional information. [Doc. 17] (citing Kirk, 667 F.2d at 529).

The Court finds that pursuant to 20 C.F.R. 404, Subpart P, Appendix 2, together with Plaintiff's "age, education, work experience, and residual functional capacity," the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr. 31]. As stated earlier, if the ALJ determines that the claimant cannot perform past relevant work, the ALJ must proceed to step five in the five-step disability determination analysis and decide whether jobs exist in the national economy that accommodate the claimant's RFC and vocational factors. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1560(c)(1).

One of the ways the Commissioner can prove the existence of a significant number of jobs is if the limitations and restrictions imposed by a claimant's impairments are only exertional limitations, and the claimant's specific vocational profile is listed in a rule contained in the Grid. 20 C.F.R. § 404, Subpt. P, App. 2. If so, then the Commissioner can directly apply that rule to establish that suitable jobs exist for the claimant. 20 C.F.R. § 404.1569a(b); 20 C.F.R. § 404, Subpt. P., App. 2 § 200.00(b). Because the Grid allows the ALJ to take administrative notice that jobs are available in the national economy, most cases do not require a vocational expert whose testimony "would both be time-consuming and cost inefficient since the effort would only yield information already before the ALJ." Kirk, 667 F.2d at 529.

Conversely, when evidence shows that a claimant has non-exertional mental impairments that preclude the claimant from performing work at a given level, "the ALJ must treat the Grids as only a framework for decision-making, and must rely on other evidence to determine whether

17

a significant number of jobs exist in the national economy that a claimant can perform." Jordan v. Comm'r of Soc. Sec., 548 F.3d 417, 424 (6th Cir. 2008). However, a mere presence of a mental impairment does not preclude use of the Grid. Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990). "A mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use of the medical-vocational guidelines." Id. (citing Buress v. Sec'y of Health & Human Servs., 835 F.2d 139, 142 (6th Cir. 1987)).

Not disputed on appeal was the ALJ's decision to give significant weight to the exertional limitations given by Dr. Hellman, limiting Plaintiff to sedentary exertion activities.[1] [Tr. 29]. Consistent with the state agency psychologist's opinion, the ALJ found that any nonexertional limitations exhibited by Plaintiff had little or no effect on her ability to perform sedentary work. [Tr. 32]. The ALJ stated, "[t]he claimant's nonexertional limitations for no more than occasional balancing, stooping, kneeling, crouching, or crawling; no climbing of ladders, ropes, or scaffolds; and no exposure to hazards leave the occupational base at the sedentary exertional level virtually intact." [Tr. 32]. Therefore, the ALJ concluded that any nonexertional limitations did not significantly affect Plaintiff's ability to perform sedentary exertion level work. [Tr. 32].

The Court rejects Plaintiff's argument that the ALJ placed improper reliance on the Grid. The ALJ was not required to obtain a vocational expert and did not err by failing to do so. Plaintiff's argument that the ALJ was required to rely on vocational expert testimony or similar evidence hinged on the finding that Plaintiff's mental impairments were more severe than found

---

[1] In October 2006, Dr. Hellman completed a "Medical Assessment of the Ability to Do Work-Related Actives (Physical)" in which he opined that Plaintiff could only carry between five to ten pounds, stand or walk for two hours at a time in an eight-hour day, sit for eight hours with frequent breaks, and could climb, kneel, and crawl occasionally but could never stoop or crouch. [Tr. 593-94]. Additionally, Dr. Hellman opined that Plaintiff could not work in environments with heights, moving machinery, chemicals, dust, or fumes. [Tr. 594].

18

by the ALJ. Because the Court finds that the ALJ's decision to give significant weight to the state agency psychologist's opinion was supported by good reason, Plaintiff's second argument that the ALJ improperly relied on the Grid must also fail. As a result of Plaintiff's nonexertional limitations having little if any effect upon Plaintiff's ability to perform sedentary work, the Court finds that the ALJ was proper in his reliance on the Grid.

Accordingly, the Court finds that Plaintiff's allegation that the ALJ erred by relying on the Grid rather than vocational expert testimony or similar evidence is not well-taken.

V. **CONCLUSION**

Based on the foregoing, the undersigned **RECOMMENDS**[2] that the Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED** and Plaintiff's Motion for Summary Judgment **[Doc. 14]** be **DENIED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).